BAYERL v BADGER MANUFACTURING COMPANY

Docket No. 103695. Submitted May 5, 1988, at Marquette. Decided June 20, 1988. Leave to appeal applied for.

Josephine Bayerl, an employee of Badger Manufacturing Company, was injured while attending an off-premises company picnic. She applied for workers' compensation benefits which the Workers' Compensation Appeal Board granted, holding that the test for determining compensability is the "but for" test. Her employer and its workers' compensation insurer appealed by leave granted.

The Court of Appeals *held:*

Recreational or social activities are within the course of employment when (1) they occur on the premises during a lunch or recreation period as a regular incident of the employment, or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment, or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life. Applying this test to the facts as found by the Workers' Compensation Appeal Board, the injury did not arise out of and in the course of employment.

Reversed.

Workers' Compensation — Scope of Employment — Recreational Activities — Social Activities.

Recreational or social activities are within the course of employment when (1) they occur on the premises during a lunch or recreation period as a regular incident of the employment, or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment, or (3) the employer derives substantial direct benefit

---

References

Am Jur 2d, Workmen's Compensation §§ 283, 284.

Workmen's compensation: injury sustained while attending employer-sponsored social affair as arising out of and in the course of employment. 47 ALR3d 566.

> from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

*Anderson, Green, Ingram & Anderson, P.C.* (by *David L. Ingram*), for plaintiff.

*Hansley, Neiman, Peterson & Beauchamp, P.C.* (by *Ralph B. K. Peterson*), for defendants.

Before: BEASLEY, P.J., and SAWYER and WEAVER, JJ.

SAWYER, J. Plaintiff was injured at a company picnic held on July 29, 1972, in Menominee, Michigan. Defendant Badger Manufacturing is a Wisconsin company which does no business in Michigan. Plaintiff received benefits under the Wisconsin workers' compensation system for a number of years following the accident. In 1982, she applied for benefits under the Michigan system. The hearing referee denied benefits, concluding that Michigan did not have jurisdiction over the claim and that plaintiff would have to look to Wisconsin as her sole source of compensation benefits.

Plaintiff then appealed to the Workers' Compensation Appeal Board, which reversed. The WCAB held that Michigan and Wisconsin had concurrent jurisdiction over the claim and that plaintiff was eligible for benefits under Michigan law.[1] Defendants now appeal by leave granted and we reverse.

Plaintiff was injured while attending a company picnic held at Henes Park in Menominee, Michigan. The WCAB summarized the facts as follows:

[1] The parties do not raise on appeal the question whether Michigan has concurrent jurisdiction with Wisconsin. Rather, the parties have limited this appeal to the question of plaintiff's eligibility for benefits under Michigan law as applied to the factual situation in which her injuries arose. Since the issue is not raised on appeal, we shall assume, without deciding, that the WCAB correctly concluded that Michigan shares jurisdiction with Wisconsin.

At the time of injury, and at the time of hearing, plaintiff was a resident of Menominee, Michigan. It is not disputed that she worked for defendant, a Wisconsin employer, under a contract of hire made in Wisconsin. Her job duties were performed exclusively in Wisconsin. Plaintiff claimed injury while assisting in some games at the employer-sponsored picnic on Saturday, July 29, 1972. While plaintiff was attempting to tie the legs of two boys together in preparation for the three-legged race, one of the contestants apparently pushed plaintiff backward, causing her to sustain injuries to her back.

*   *   *

Plaintiff, first employed by defendant in 1968, testified she attended her first company picnic on July 29, 1972. Although co-employees had questioned her non-appearance at prior picnics, it was plaintiff's understanding that attendance was purely voluntary at the annual event. Plaintiff recalled notices were posted in the plant, while Alfred Eisenzoph, plaintiff's then-foreman, and Fred Morois, employed in the tool room in 1972, also recalled that notices were included in employee pay envelopes. It was further established that defendant paid for all food and drink consumed at the picnic, but sent the notices out only to ascertain the number of employees and/or family members who would be attending the event. It was further established that the event was always held on a Saturday, a non-work day, and no wages were paid to anyone on that date. There was also no evidence to suggest that defendant utilized this picnic to praise individual employees or give out awards, or in any other way use this event as an organized method to further company goals or achievements.

On July 29, 1972, the picnic was held in a public park in Menominee, Michigan, although the plant itself was located across the river in Minette [sic—Marinette?], Wisconsin. In addition to food and drink, organized activities including the three-legged race, were part of the program. Plaintiff

volunteered to help in this activity, and while tying the legs of two contestants together in preparation for the race, she was pushed, falling backward and injuring her back.

Plaintiff testified that she, along with several other co-employees, was approached by a former coworker named Carol Denowski who had been previously promoted to the office area. At the meeting, held in the plant cafeteria, plaintiff as well as other co-employees were asked to help out on the game committee, and plaintiff agreed to do so.

Although the WCAB's opinion only makes passing reference to the facts surrounding the organization of various activities at the picnic, it appears from the testimony that various activities were engaged in, such as horseshoes, softball, tug of war, egg throwing and various other games for the children. These activities were organized by those employees who volunteered to do so. A coworker was able to get plaintiff to volunteer to assist with the children's games. As indicated above, plaintiff was injured when one of the children entered in the three-legged race pushed her and she fell on her buttocks.

The first question for our consideration is whether the "but for" test outlined in *Nemeth v Michigan Building Components,* 390 Mich 734; 213 NW2d 144 (1973), is applicable to the case at bar. Both plaintiff and the WCAB contend that *Nemeth* controls the case at bar. Defendants, on the other hand, argue that *Nemeth* is distinguishable from the case at bar and urges us to adopt the test set forth in 1A Larson, Workmen's Compensation Law, § 22.00, p 5—82.

Before we can consider adopting the Larson test, we must determine the applicability of *Nemeth* to the case at bar since, no matter how appealing the Larson test may be, we cannot prefer it over *Nemeth* if the Supreme Court case is applicable.

We conclude that *Nemeth* is distinguishable from the case at bar.

In *Nemeth, supra,* the employee was injured while using an upright radial saw on the employer's premises after work while working on a personal project for a coworker. The Supreme Court, in an opinion by Justice Lᴇᴠɪɴ, applied a "but for" test in concluding that the injury arose out of the employee's employment:

> But for the employment relationship, Nemeth probably would not have been importuned by the fellow employee to use the saw and, but for the employment relationship, he would not have been allowed to use either the employer's saw or his premises for this purpose. [390 Mich 736-737.]

Justice Lᴇᴠɪɴ went on to note that liability has been imposed on employers where the injury occurred during a social activity and that, in *Nemeth,* the fact that the employer allowed Nemeth to "use the machine after hours similarly served to promote and maintain good employer-employee relationships." *Id.* at 738.

A broad reading of the *Nemeth* decision and its "but for" test would result in plaintiff's being eligible for benefits in the case at bar. However, we do not believe that such a broad reading of *Nemeth* is appropriate.[2] Rather, we believe that there is an important distinction between an injury sustained at the place of business, albeit while using machinery on a personal project, and an injury sustained at a company picnic held off the premises during nonwork hours. In fact, in the

---

[2] We note with interest that several decisions of the wcab, which are cited by the wcab panel in the case at bar, applied the Larson test even after the Supreme Court's decision in *Nemeth, supra.* The wcab's opinion cites as examples the decisions in *Kissel v Korvettes,* 1980 WCABO 2970; *Boyle v Oakwood Hospital Corp,* 1980 WCABO 2626; *Burmeister v City of Grandville,* 1981 WCABO 978.

recreational setting, this distinction is considered by one of the factors of the Larson test.

In discussing whether recreational or social activities are within the scope of employment, Larson, *supra,* § 22.00, p 5—82, sets forth the following test:

> Recreational or social activities are within the course of employment when
>
> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
>
> (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
>
> (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

The situation in *Nemeth* is similar to that set forth under the first prong of the Larson test. Although Nemeth was not injured during a lunch or recreation period as a regular incident of the employment, he was injured on the premises during his own personal time.[3] In any event, we believe that the issue of injuries occurring at the company picnic is sufficiently different from *Nemeth, supra,* to warrant the conclusion that *Nemeth* does not apply to the case at bar.

Having concluded that *Nemeth* does not apply, it becomes necessary to determine what test should be applied. We have been unable to find, nor have the parties cited, any cases which con-

[3] For that matter, we cannot expect the Larson test to perfectly match the *Nemeth* situation since the Larson test concerns recreational or social activities and not personal use of the employer's equipment.

sider the test to be applied in compensation cases where the injury occurs at a company picnic or the like. Inasmuch as it appears that the WCAB has applied the Larson test, and we believe that the Larson test represents an appropriate application of the Michigan workers' compensation act to these situations, we adopt the Larson test.

Our task of applying the Larson test to the case at bar is made considerably easier by the fact that the WCAB specifically concluded that plaintiff would not be eligible for benefits under the Larson test:

> Generally speaking, none of the three criteria applied to the instant case. In this matter, the company picnic was not held on the premises of defendant, nor was it held during a lunch or recreation period. Under number two, the employer did not require participation, and this was corroborated not only by plaintiff but also by two other co-employees. Finally, under number three, there was no indication that the employer derived any benefit from the activity beyond the presumed value of improvement in employee health and morale as noted by Dr. Larson.

The WCAB then went on to consider the more detailed analysis contained in Larson, *supra,* § 22.23, p 5—110, which provides as follows:

> EMPLOYER SPONSORSHIP: COMPANY PICNICS AND PARTIES
>
> When the degree of employer involvement descends from compulsion to mere sponsorship or encouragement, the questions become closer, and it becomes necessary to consult a series of tests bearing on work-connection. The most prolific illustrations of this problem are company picnics and office parties. Among the questions to be asked are: Did the employer in fact sponsor the event?

To what extent was attendance really voluntary? Was there some degree of encouragement to attend in such factors as taking a record of attendance, paying for the time spent, requiring the employee to work if he did not attend, or maintaining a known custom of attending? Did the employer finance the occasion to a substantial extent? Did the employees regard it as an employment benefit to which they were entitled as of right? Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?

The WCAB applied these factors to the facts of the instant case as follows:

Again, applying the specific facts to the guidelines delineated by Professor Larson, it is clear that plaintiff's injury did not arise out of and in the course of her employment by virtue of her attendance at a company sponsored picnic. Addressing each question in turn, we note that the employer did sponsor the event, but that attendance was entirely voluntary on the part of the employees, both hourly and management. The extent of employer interest involved only the numbers of people to attend so as to insure sufficient food and drink. The evidence persuades us that there was no degree of encouragement to attend. The employees were not paid, there was no record made of attendance or non-attendance, the picnic was scheduled on a non-work day when no work was scheduled, and there was no indication that the employees regarded it as a benefit to which they were entitled. As noted by the three employees who testified, most did not attend the picnic on a regular basis. In fact, Mr. Eisenzoph testified that the picnics started in response to the policy of other companies in the area in holding picnics on an annual basis. He further testified that attendance had dropped from approximately 80 percent

in 1972 to about 60 percent in 1982. Finally, there is no indication that the employer reaped any benefit from the event other than the presumed better morale and goodwill generated among the employees. There was no evidence to suggest that the employer used the event to present awards to employees or further the goals or achievements of the company or the individuals.

We see no basis for disagreeing with the WCAB's findings in this regard. Thus, we conclude that, in applying the Larson test, plaintiff is ineligible for compensation benefits for her injury which occurred at the company picnic.

For the above reasons, we reverse the decision of the WCAB and remand the matter to the WCAB to enter an order in favor of defendants. We do not retain jurisdiction. Defendants may tax costs.