ALLISON v PEPSI-COLA BOTTLING COMPANY

Docket No. 112695. Submitted December 19, 1989, at Lansing. De-
    cided April 2, 1990. Leave to appeal applied for.

David P. Allison, a driver-salesman employed by the Pepsi-Cola
    Bottling Company, sustained fatal injuries in a highway acci-
    dent which involved only the motor vehicle he was driving on
    his way home from a "Vegas Night" party hosted by Pepsi at a
    hotel on May 26, 1979, for those of its salesmen who, like
    Allison, had exceeded their sales quota. Joann Allison, widow
    of David P. Allison, sought workers' compensation benefits
    which were initially denied by a referee for the Bureau of
    Workers' Disability Compensation but subsequently granted by
    the Workers' Compensation Appeal Board. Pepsi and its in-
    surer, National Union Fire Insurance Company, sought leave to
    appeal in the Court of Appeals to challenge the WCAB's determi-
    nation that decedent, who had consumed beer at the party, was
    in the course of his employment while attending the party and
    that he had continued to be so while driving home, even after
    having spent an hour at a hotel room which was rented by co-
    workers after the party had concluded and where beer was
    available. Pepsi and its insurer additionally urged retroactive
    application of 1980 PA 357, effective January 1, 1982, which
    amended § 301 of the Workers' Disability Compensation Act to
    provide that an injury incurred exclusively in the pursuit of
    social or recreational activity is not covered under the act. The
    Court of Appeals denied the application for leave to appeal.
    The Supreme Court, in lieu of granting leave to appeal, re-
    manded the matter to the Court of Appeals for consideration as
    on leave granted. 431 Mich 879 (1988).

    The Court of Appeals *held:*

    1. Recreational or social activities are within the course of
    employment when (1) they occur on the premises during a
    lunch or recreation period as a regular incident of the employ-

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 34, 250, 284.
Workmen's compensation: injury sustained while attending em-
    ployer-sponsored social affair as arising out of and in course of
    employment. 47 ALR3d 566.

ment, or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of employment, or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life. Here, the evidence supports the conclusion that conditions (2) and (3) were met. There was evidence that attendance at the party was impliedly made mandatory and that Pepsi derived the benefit of increased sales from the sales inducement program of which the party was a component.

2. Decedent's attendance at the postparty gathering in the hotel room did not break the employment nexus or otherwise terminate his "in the course of employment" status. There was no evidence indicating that decedent had consumed beer in the hotel room.

3. The amendment to § 301, as described above, has prospective application from January 1, 1982. Thus, it has no application to this case.

Affirmed.

1. WORKERS' COMPENSATION — SCOPE OF EMPLOYMENT — RECRE-
ATIONAL OR SOCIAL ACTIVITIES.

Recreational or social activities are within the course of employment when (1) they occur on the premises during a lunch or recreation period as a regular incident of the employment, or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment, or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreational and social life.

2. WORKERS' COMPENSATION — SCOPE OF EMPLOYMENT — RECRE-
ATIONAL OR SOCIAL ACTIVITIES — BENEFIT TO EMPLOYER.

Benefit derived by an employer from recreational or social activities by its employees, in order for such activities to be deemed within the course of employment, need not exclusively flow from the activities themselves; thus, a social function organized by an employer as a reward for those of its salesmen who exceeded their sales quota may be considered within the course of employment.

3. WORKERS' COMPENSATION — SCOPE OF EMPLOYMENT — RECRE-
ATIONAL OR SOCIAL ACTIVITIES — STATUTES.

The provision of the Workers' Disability Compensation Act which

states that an injury incurred exclusively in the pursuit of a social or recreational activity is not covered under the act is to be given prospective application from the January 1, 1982, effective date of the amendatory statute that added the provision to the act (MCL 418.301[3]; MSA 17.237[301][3], as amended by 1980 PA 357).

*Van Benschoten, Hurlburt & Tsiros, P.C.* (by *Harvey E. Van Benschoten* and *Lawrence A. Hurlburt*), for plaintiff.

*Neal & Lengauer* (by *Thomas E. Lengauer*), for defendants.

Before: MICHAEL J. KELLY, P.J., and SULLIVAN and G. S. ALLEN,* JJ.

G. S. ALLEN, J. In this matter, we are called upon to address the emerging law regarding the circumstances under which an employee, who is fatally injured while driving home following an employer-sponsored social event, may be deemed to have sustained his injury in the course of employment.[1] On the night of May 26, 1979, David Allison died in a single-car accident as he was returning home from a "Vegas Night" party sponsored by his employer, Pepsi-Cola Bottling Company, held at the Sheraton Motor Inn in Flint.

On August 28, 1979, decedent's widow filed a petition for hearing with the Bureau of Workers' Disability Compensation, alleging that her husband's death was caused by trauma arising out of and in the course of his employment. On January 5, 1983, the hearing referee ruled that the Vegas

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] The test to determine whether a recreational or social activity falls within the scope of employment was not decided until June, 1988, in *Bayerl v Badger Mfg Co,* 169 Mich App 444; 426 NW2d 736 (1988), lv den 432 Mich 852 (1989). This Court adopted the test set forth in 1A Larson, Workmen's Compensation Law, § 22.00, p 5-82.

Night party was a company-sponsored event having benefit to both the employer and employee, but because of insufficient evidence that decedent was intoxicated at the time he left the party the referee denied the claim for workers' compensation benefits.

Appeal was taken to the Workers' Compensation Appeal Board which, after allowing the taking of testimony of Kenneth Beede, an eyewitness to decedent's drinking at the party, held that decedent was in the course of his employment at the time of his death, that the accident did arise out of his employment, and that decedent's widow and children were thus entitled to workers' compensation benefits. Defendants' application for leave to appeal was denied by the Court of Appeals on April 28, 1988, and on October 19, 1988, the Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted. 431 Mich 879.

### FACTS

Decedent was employed as a driver-salesman by defendant Pepsi-Cola Bottling Company. In that capacity, he participated in a six-week sales promotion program encouraging driver-salesmen to increase the number of their route customers. The culmination of the program was a company-sponsored Vegas Night party at which the driver-salesmen were rewarded with "fun" or bogus money with which they could buy valuable prizes such as radios, color television sets or trips to the real Las Vegas. For the number of additional cases of Pepsi sold by a driver-salesman over a given quota, the employee was rewarded with a proportional amount of "fun" money for use at the Vegas Night party.

Attendance at the party was not mandatory, but the only possible use of the fun money was in spending it at the party. It was not usable or redeemable at any other place or time and could not be given to any other employee. Defendant employer paid for all of the prizes and all food, beer and liquor at the party. On the afternoon of May 26, 1979, decedent left his employment and returned home where, before leaving for the party, he consumed a six-pack of beer. He left home between 5:30 and 6:00 P.M. and was next seen at one of the gaming tables at the party at about 6:30 P.M. He was playing blackjack with the fun money and drinking beer. Kenneth Beede, a warehouse supervisor who attended the party and the person whose deposition was taken by order of the WCAB, stated that, when he saw decedent at about 6:30 P.M., decedent was already "light-headed" and by 10:00 P.M. he was so drunk "he was holding on to things including me." He estimated that between 6:30 and 10:00 P.M. decedent had consumed sixteen beers. When Beede was asked whether attendance at the party was mandatory he responded, "Well, it wasn't completely but like Potestio who is the branch manager, you know, he told them you better be there."

When the Vegas Night party ended at about 10:30 or 10:45 P.M., several of the employees rented a room upstairs at the Sheraton where they continued playing cards. Decedent was invited to this postparty game and each person "grabbed a couple" of beers to take upstairs. However, there is no testimony that while upstairs decedent drank more beer. Jan Roberson, wife of one of the driver-salesmen, saw him in the upstairs room at about 11:45 P.M. She testified that decedent was sitting at a card table slumped over and nodding like he was trying to go to sleep. There was some kind of a

drink in front of him, but she did not see him drink. While she was there, room service brought up a case of beer and everyone, except decedent, chipped in to pay for it. At that point decedent stood up and started to leave, but fell over another employee who was passed out on the bed. He stood up again, "stood there a moment, straightened his jacket and then he walked toward the door like he was walking on eggs or being very careful with his manner of walking."

It was slightly before midnight when decedent left the room. About thirty minutes later, decedent was killed when the company truck he was driving left the highway leading to his home and over-turned. In its formal opinion, the WCAB made the following findings of fact.

> Our factual findings are that [decedent] was attending a company-sponsored party which resulted from a company promotion which clearly benefitted [sic] the company by increasing sales of Pepsi-Cola, that this party was a special mission taking the case out of the ordinary rule that travel to and from work resulting in personal injury or death is NOT compensable. *Bush v Parmenter, Forsythe, Rude & Dethmers,* 413 Mich 444, 451-452 [320 NW2d 858] (1982); *LeVasseur v Allen Electric Co, et al,* 338 Mich 121 [61 NW2d 93] (1953). We further find as fact that [decedent] became drunk by drinking at least 16 bottles of beer from a free bar furnished by defendant (*before the party ended*), on top of six which he had consumed at home and that there is no evidence that he drank any more beer in a hotel room where some of the party participants adjourned when the party closed to play cards and drink more beer, and that [decedent's] drunk driving played a part in his death. We further find as fact that defendant increased the risk of traffic for [decedent] by allowing him to consume this enormous amount of beer to the point where he be-

came falling-down drunk before he started to drive home. *Stark v L E Myers Co,* 58 Mich App 439, 443 [228 NW2d 411] (1975); *Stover v Midwest Tank,* 87 Mich App 452, 458-459 [275 NW2d 15] (1978).

\* \* \*

While there appears to have been no posthumous blood tests, we find as fact that decedent was very drunk indeed, made so from drinking defendant's beer, in the presence of Mr. Beede, a supervisor, who obviously made no effort to stop him or to have him taken home. It is clear to us that in this case, on these discrete facts, the party was obviously a benefit to both decedent and other employees and to defendant. Defendant clearly derived a special benefit, amounting to apparently largely augmented sales, by the promotion which ended in the Vegas Night Party. To hold otherwise is to ignore reality.

\* \* \*

Plaintiff must also prevail on the remaining issue raised by defendant, which seems to be that decedent departed from the employment when he went upstairs, which fact seemed of such great importance to the administrative law judge without further explanation. We find again as discrete fact that he did not. He seems to have been as drunk as might be on defendant's beer before he went upstairs, and he stayed there only a little over an hour. Certainly this brief interlude cannot constitute the kind of departure from the course of employment condemned in our leading case, *Bush, supra.*

\* \* \*

It cannot be argued here—defendant does not try—that plaintiff's decedent was guilty of some kind of misconduct for driving drunk: He was drunk on defendant's own beer. Defendant gave it to him, and the record is devoid of restrainting [sic] action; from the testimony, practically everybody at the party was drunk, some were passed out, all, evidently, on defendant's beer and what-

ever else defendant allowed to be there. Only a novice in a cloistered nunnery would believe that such permissive drinking to gross excess did not cause an employee "excessive exposure to traffic risks." *Stark, supra,* 443. [Emphasis in original.]

## ISSUES

On appeal, defendants state the issues to be: (I) Was decedent in the course of his employment when he attended the party? Defendants claim decedent never entered into employment that evening and that the WCAB misapplied the Larson test in holding to the contrary; (II) Was decedent in the course of his employment while driving home from the party? Defendants argue that decedent drank to such excess he severed any reasonable nexus to his employment, assuming he was in the course of employment when he went to the party; and (III) Should MCL 418.301; MSA 17.237(301), as amended effective January 1, 1982, be applied retroactively. Defendants argue that the amendment is retroactive.

I

Defendants concede that the proper test for determining whether attendance at an employer's social function is conduct within the scope of employment is the test set forth by Professor Larson in 1A Larson, Workmen's Compensation Law, § 22.00, p 5-82. That text reads:

Recreational or social activities are within the course of employment when
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

Defendants assert that none of the three Larson conditions were met in the instant case, arguing: condition (1) is factually inapplicable; condition (2) is not met because employee participation was not mandatory and several driver-salesmen did not attend; and condition (3) is not met because any benefit to the employer, Pepsi-Cola Bottling Company, was derived prior to the party and hence the employer derived no "substantial direct benefit from the activity."

Contrary to defendants' position, we find Larson condition (2) clearly substantiated by the record. True, attendance was not mandatory per se. However, the "must" nature of attendance was strongly implied. Only by attending the party would a driver-employee be able to win one of the many prizes or play poker. Only by attending would the employee be able to use the fun money to purchase prizes. Thus, by building conditions into winning which required attendance, the employer "impliedly required participation." Furthermore, the transcript contains the uncontradicted testimony of Pepsi's branch manager that driver-salesmen were told "you better be there."

The question whether Larson condition (3) is met depends upon whether the employer's benefit may be derived from activity *prior to* the social event or whether it must exclusively flow *from the event itself.* The question is one of first impression

in Michigan. Other states have reached conflicting results. In *Beckham v Estate of Brown,* 100 NM 1; 664 P2d 1014 (1983), cert quashed 100 NM 192; 668 P2d 308 (1983), the decedent was killed in a plane crash during a trip that was given as a prize by the decedent's employer following a sales contest. In holding that the decedent was not in the course of his employment, the court determined that the benefit to the employer must exist "at the time of the accident" and pointed out that the benefit of increased sales came prior to the plane trip. Reaching a contrary result was *Lawrence v Industrial Comm of Arizona,* 78 Ariz 401; 281 P2d 113 (1955). There, an injury sustained by a sales contest winner at a subsequent social affair given by the employer was held to have occurred during the course of employment. The court reasoned that the sales contest benefited the employer by increasing the employer's business and the social outing was an integral part of the business plan. See Anno: *Workmen's Compensation: Injury sustained while attending employer-sponsored social affair as arising out of and in the course of employment,* 47 ALR3d 566.

Where, as here, there is a clear and convincing relationship between the benefit to the employer and the subsequent social event, we believe that the better reasoning supports a conclusion that the employer's benefit need not arise at the time of the social event. In the instant case, the benefit to Pepsi arose when the number of customers on the driver-salesmen routes was increased by the efforts of the driver-salesmen. However, the incentive to augment the number of customers stemmed from the employer's assurance that they would be rewarded with fun money with which they could buy prizes, play poker, or purchase a trip to the real Las Vegas. In short, the sales promotion did not

end when the new customers were secured. It ended at the conclusion of the Vegas Night party. Accordingly, we hold that the third Larson condition was met and that decedent was in the course of his employment when he attended the party.

Finally, the Larson test does not require that both conditions (2) and (3) be met. The conditions of the test are joined by the disjunctive "or," and thus the fulfillment of only one condition would justify an award of benefits. Nevertheless, we agree with the WCAB that both conditions (2) and (3) were met in the instant case.

II

Relying on *Stark v L E Myers Co,* 58 Mich App 439; 228 NW2d 411 (1973), lv den 394 Mich 814 (1975), *Pappas v Sport Services, Inc,* 68 Mich App 423; 243 NW2d 10 (1976), lv den 397 Mich 825 (1976), and *Bush v Parmenter, Forsythe, Rude & Dethmers,* 413 Mich 444; 320 NW2d 858 (1982), defendants argue that, even if decedent was in the course of his employment when he attended the party, he was not in the course of his employment while traveling home. We find defendants' reliance on *Stark* totally misplaced. That case involved an injury to an employee while driving from home to work. In deciding whether the injury was sufficiently employment related to constitute an exception to the well-settled rule that injuries going to and coming from work are not compensable (See *Thomas v Certified Refrigeration, Inc,* 392 Mich 623, 631, n 3; 221 NW2d 378 [1974]), the *Stark* Court employed a four-factor test to which defendants refer in their brief. Defendants contend that, since the facts in the instant case do not fall within the four-factor *Stark* formula, decedent was not in the course of his employment while driving

home. The flaw in defendants' argument is that decedent was not driving to work, but was attending a special function at his employer's request and benefit and was in the course of his employment while there.

On similar grounds, *Pappas* is distinguishable. There, plaintiff, a cook, worked overtime at a party held off the premises by his employer. On the return trip home, at about 3:00 A.M., plaintiff fell asleep at the wheel and ran into a highway abutment. Our Court denied workers' compensation benefits on the ground that plaintiff was merely driving home after working overtime. The Court expressly noted that, had plaintiff been required to commute to and from home solely to attend the party, a different question would be faced.[2]

Of greater merit is defendants' reliance on *Bush.* There, plaintiff, an attorney, left his law office in Muskegon to attend a legal seminar in Grand Rapids. The seminar lasted from 4:00 P.M. to 5:00 P.M., and thereafter the attendees adjourned to an adjoining room for drinks and light snacks provided by the seminar sponsor. Bush remained for the cocktail hour and, after having two drinks, left at about 6:00 P.M. and drove back to Muskegon. Between 8:30 P.M. and 2:30 A.M., he visited a nightclub where he had several drinks and danced with several patrons. At about 2:45 A.M., he arrived at a nearby restaurant where he ordered breakfast. While eating, he picked a fight with a

---

[2] The *Pappas* Court stated:

Had the plaintiff been required to commute to and from home solely to attend this social function, we would again face a different question. In the present case, we have only a delay in the plaintiff's trip home. The nature of the commutation was not changed by plaintiff's attendance at the party. He was merely driving home from overtime work . . . . [68 Mich App 430-431.]

customer, annoyed a female patron, and ordered a second breakfast. The cook, deciding that it would be futile to argue with him, cooked a second breakfast without charge. Declining the advice of restaurant employees that he take a cab home and offers to pay his cab fare, Bush left the restaurant a little after 3:00 A.M. At 3:10 A.M. he was killed in his car some 3½ miles from the restaurant by a shotgun blast to his head. In an opinion by Justice WILLIAMS, the Supreme Court unanimously held that

> decedent's deviation was so extensive and involved such added risks totally unrelated to his employment that decedent had broken the employment nexus and thus had ended the business nature of his trip prior to his death. Therefore, we reverse the Court of Appeals decision and vacate the compensation award. [*Bush, supra,* p 446.]

The Court further stated:

> To say that this did not substantially increase the likelihood of injury is to ignore reality. To find that such conduct did not "dwarf the business portion of the trip" or break the employment-injury nexus is to create a rule which could never be applied. [*Bush, supra,* pp 459-460.]

At oral argument, defendants' counsel argued that, by drinking a six-pack before leaving home for the party, by consuming some sixteen beers between 6:30 and the end of the party at 10:30, and by then adjourning to a separate room where more beer was served, decedent severed any employment nexus he might otherwise have had as a guest at the party. We disagree.

The instant situation is palpably distinguishable from *Bush.* In *Bush,* all of the overindulgence

(with the exception of two drinks at the cocktail hour) transpired after the decedent left the seminar. Also, this overindulgence extended over eight hours after he had left. In the instant case, except for the six-pack consumed at home, all of decedent's drinking occurred at the party. There is no testimony that he drank anything after the party ended when he and several employees adjourned to an upstairs room. In fact, Jan Roberson's testimony suggests that decedent used the upstairs interlude to sober up before leaving to drive home. Further, decedent remained upstairs for only a little over one hour. Given these circumstances, we are unable to conclude that decedent had broken the employment nexus or otherwise had terminated his "in the course of employment" status which he held upon arrival at the party.

Finally, we note that competent testimony supports the WCAB's findings that: (a) decedent attended a company promotion which benefited the company and took the case out of the rule that travel to and from work is not compensable; (b) that decedent became drunk on sixteen bottles of beer furnished to him by defendant "before the party ended"; (c) that there is no evidence that decedent drank more beer in a hotel room to which some persons adjourned; (d) that decedent did not depart from his employment status when he went upstairs; and (e) that defendant increased the risk of a traffic accident for decedent by permitting him to consume an enormous amount of beer before he started to drive home. MCL 418.861; MSA 17.237(861) provides that "[t]he findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive." Findings of fact by the WCAB will be upheld by an appellate court where there is "any competent evidence" on the record to support the find-

ings. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978); *Sanford v Ryerson & Haynes, Inc,* 396 Mich 630, 634; 242 NW2d 393 (1976).

## III

Last, we find no merit in defendant's claim that MCL 418.301(3); MSA 17.237(301)(3), as amended by 1980 PA 357, effective January 1, 1982, should be applied retroactively in this case. The amended language provides that "an injury incurred exclusively in the pursuit of a social or recreational activity is not covered under this act."[3] This issue was not raised below, and generally questions not presented and preserved before the WCAB may not be considered on appellate review. *Kushay v Sexton Dairy Co,* 394 Mich 69, 77; 228 NW2d 205 (1975). Further, had the issue been raised below it is doubtful that the WCAB would have found decedent's death was "exclusively" incurred in pursuit of a social activity. As noted earlier, the WCAB found a strong work connection between the employer's promotional drive and the party.

Finally, and most significantly, we hold that the statute applies only prospectively from its effective date of January 1, 1982. The Supreme Court so held in *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985).[4] The fatal accident in the instant case occurred May 26, 1979, and thus the amended provision is not applicable.

Having found no error on any of the issues raised by defendants, the decision of the Workers' Compensation Appeal Board is affirmed.

[3] This statute has subsequently been amended, changing the quoted language somewhat.

[4] While *Hurd* pertained to § 301(2) regarding mental disabilities, we believe the same conclusion applies to § 301(3) regarding employees going to and from work.