*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DETROIT LAND BANK AUTHORITY,

        Plaintiff-Appellee,

v

5005 32ND STREET DETROIT MI 48210 and 4486 TOWNSEND DETROIT MI 48214,

        Defendants,

and

WILLIE MORGAN,

        Appellant.

UNPUBLISHED
January 14, 2021

No. 350231
Wayne Circuit Court
LC No. 19-007080-CH

Before: K. F. KELLY, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

Appellant Willie Morgan (defendant),[1] appearing *in propria persona*, appeals as of right the circuit court decision quieting title to the property known as 4486 Townsend Detroit MI 48214 in favor of plaintiff. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On May 13, 2019, plaintiff filed a petition for expedited quiet title and foreclosure action pertaining to multiple properties including 4486 Townsend. Specifically, plaintiff alleged that it

---

[1] Plaintiff land bank filed a petition for expedited quiet title and foreclosure delineating the properties at issue, and therefore, the properties are the listed defendants. Appellant Willie Morgan claims to be the owner of 4486 Townsend and appeared at the hearing to contest plaintiff's requested relief. Thus, for ease of reference, the singular "defendant" refers to Morgan.

-1-

was a public body corporation granted the authority to seek quiet title relief pursuant to MCL 124.751 *et seq.* of the Land Bank Fast Track Act. Plaintiff claimed ownership of the parcels of real property identified as defendants as a result of nuisance abatement, tax foreclosure judgments, or other deeds. Plaintiff asserted that a circuit court had the authority to extinguish any legal interest and liens against the real property, including liens for unpaid taxes or special assessments, by an order vesting absolute title to the property with plaintiff. Plaintiff alleged that it was created to foster economic development and revitalization, MCL 124.752, and this action for quiet title was necessary to establish clear and marketable title to the properties and to return them to productive use. Plaintiff requested a hearing date and a final judgment of quiet title and foreclosure in favor of plaintiff and against the listed properties as well as any owners or interest holders. Specifically, it requested good and marketable fee simple title to each parcel without any further rights of redemption. There is no indication that defendant filed written objections or a response to the petition.

On June 21, 2019, a hearing was held on plaintiff's petition. Defendant appeared at the hearing and claimed that he contacted plaintiff about the property and expressed an interest in the buy-back program which entitled a property owner to recover the property for $1,000. Defendant advised the court that he was placed on disability for emotional issues, had not worked since 2007, and "became disabled" in 2012. Defendant claimed that his father purchased the property from a Wayne County foreclosed home auction in 2010 because defendant had no job, no money, and no place to stay. Once defendant started to receive disability, he allegedly began to "fix up" the inside of the home and had receipts for the work performed on the home, including installation of a hot water tank, new plumbing, and brick repair. He acknowledged that the home was being foreclosed upon in 2014, but he had nowhere else to go and continued to stay there. However, defendant spent winters with a friend because a kerosene heater did not sufficiently warm the home. Nonetheless, he left his furniture, clothes, shoes, and television there.

Defendant initially represented that plaintiff did not send any information about the buy–back program, but acknowledged that his brother, Kennard Thomas contacted plaintiff about the home. Defendant asserted that he recently spoke to Legal Aid, but it needed more time to assist him. He also claimed that plaintiff represented the property could be returned to the buy-back program if he provided his birth certificate, the original 2010 deed to the home, and his identification. Although the deed was in the business name, WJJ Plus, defendant allegedly had a certificate to show he was the business owner. Defendant argued that plaintiff initially accepted his documentation, but then said he could not "buy it back because they're putting it into a different pipeline." He represented that he had tried three times since 2017 to buy the home back. The trial court adjourned the hearing for a month to allow defendant to consult with Legal Aid.

When the hearing resumed on July 26, 2019, defendant did not appear with counsel. However, defendant now argued that the city of Detroit improperly and illegally inflated property tax assessments that resulted in one in four properties being placed in foreclosure. He further argued that demolitions occurred at the expense of lower income residents who could have received assistance.

The trial court acknowledged defendant's points regarding the property assessments being too high and demolitions. However, the Wayne County Treasurer acquired title through tax

foreclosure, the foreclosure process was complete, and the trial court was limited in the relief it could grant regarding defendant's challenge to plaintiff's request to quiet title.

Defendant represented that he continued to occupy the home and also claimed to have the $1,000 necessary to enter the buy-back program, but was advised that the home was recently sold to the United Community Housing Coalition. He also admitted that utilities had not been available at the home since 2014, including water and electricity. Defendant believed that plaintiff was motivated solely by profit and wanted to sell the home for more than the $1,000 that would be obtained from the buy-back program.

Plaintiff's counsel responded that the property had not been sold. Rather, plaintiff's occupied property team members advised defendant to contact the United Housing Commission (UHC) for assistance. Plaintiff's counsel denied that any sale of the property to UHC occurred because plaintiff did not partner with UHC to sell properties. It was admitted that defendant was not eligible to purchase the property because three different individuals expressed an interest in purchasing the property. There was no "follow through" by these individuals, and the property could not be sold to a "transient population" where one person moves in, then leaves, and another occupant moves in. Therefore, the property would be sold to a community partner, and if defendant was occupying the property, the community partner could reach out to defendant to determine if he wished to purchase it.

The trial court stated that its experience with plaintiff was that it sought "to keep people in homes as much as they can," but there had to be a legitimate claim to the property. Generally, plaintiff worked with renters or owners that had fallen on hard times. But here, the trial court noted that defendant's father did not pay the taxes, and the property was tax foreclosed and returned to the treasurer and now to plaintiff. The court also noted that an individual had to show a sufficient connection to property as well as provide an assurance that the taxes would be paid moving forward. Additionally, defendant had not demonstrated that he could pay for utilities to maintain the property. The trial court granted plaintiff's motion for a default judgment and signed a written order quieting title to the property.

## II. ANALYSIS

Defendant contends that the trial court erred in quieting title to the property in favor of plaintiff because he complied with the requirements of the buy-back program, the tax assessment was illegal and inflated, and plaintiff[2] was motivated to sell the Townsend home for profit. We disagree.

---

[2] Plaintiff contends that dismissal of this appeal is warranted for lack of jurisdiction because defendant failed to pay all outstanding taxes, interest, penalties, and fees. See MCL 124.759(13). Defendant did not expressly respond to this legal argument, but questions whether such a requirement constitutes harassment and intimidation. We note that defendant's financial resources are limited, and the trial court granted a waiver for the record transmittal fee to pursue the appeal. Even if we assume, without deciding, that defendant met the criteria of MCL 124.759(13), see e.g.,

-3-

Equitable actions to resolve title disputes to property and questions of law are reviewed de novo. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008).

In MCL 124.752, the Legislature made findings addressing the need for the land bank, stating that "it is in the best interests of this state and local units of government in this state to assemble or dispose of public property, including tax reverted property, in a coordinated manner to foster the development of that property and to promote economic growth[.]" Additionally, it is a valid purpose for the land bank to "acquire, assemble, dispose of, and quiet title to property." *Id.*

In *Rental Props Owners Ass'n v Kent County Treasurer*, 308 Mich App 498, 527-530; 866 NW2d 817 (2014), this Court delineated the statutory petition process the Kent County land bank authority needed to follow to quiet title to property and how an interested person must object to the action:

> A land bank fast track authority like the KCLBA may initiate an expedited quiet-title and foreclosure action to quiet title to real property by recording notice of the pending action with the register of deeds in the relevant county. MCL 124.759(1). The land bank fast track authority must initiate a search of records to identify the owners of a property interest in the property who are entitled to notice of hearing on such an action and any identified property-interest owner is entitled to notice of the action. MCL 124.759(2). The land bank fast track authority may file a petition in the circuit court listing all the properties subject to the expedited quiet-title and foreclosure action and seeking a judgment in favor of the land bank fast track authority; the petition must include a date within 90 days on which the authority requests a hearing. MCL 124.759(3).
>
> If a petition for an expedited quiet-title and foreclosure hearing is filed under MCL 124.759(3), a person claiming an interest in a parcel of property set forth in the petition who desires to contest that petition must "file written objections with the clerk of the circuit court and serve those objections on the [land bank fast track] authority before the date of the hearing." MCL 124.759(11). The judgment must specify, in part, that all existing recorded and unrecorded interests in that property are extinguished (except in certain limited circumstances not at issue in this case) and that fee simple title to the foreclosed property is vested absolutely in the land bank fast track authority. MCL 124.759(11)(b) and (e); MCL 124.759(12). Under MCL 124.759(12) the judgment may not be modified, stayed, or held invalid except as provided in MCL 124.759(13), which allows a land bank fast track authority or person claiming to have a property interest under MCL 124.759(2) to appeal the trial court's foreclosure order within 21 days to the Court of Appeals. Moreover, if the judgment of foreclosure is entered under MCL 124.759(12), "the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive notice of the expedited quiet title and

---

*People v Morris*, 228 Mich App 380, 382; 579 NW2d 109 (1998); *Bayerl v Badger Mfg Co*, 169 Mich App 444, 445 n 1; 426 NW2d 736 (1988), we nonetheless conclude that defendant cannot establish entitlement to relief on the merits of the issue.

foreclosure action shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this subsection." MCL 124.759(15).

In MCL 124.754(1)(l), the Legislature delineated the powers of the land bank and authorized it to "[d]o all other things necessary or convenient to achieve the objectives and purposes of the authority or other laws that related to the purposes and responsibility of the authority."

Defendant contends that he was entitled to enter into the buy-back program and the trial court erred in quieting title to the property in favor of plaintiff. However, there is no indication that defendant filed the written objections as required by MCL 124.759(11), and there is no documentation in the record to support his ownership interest and ability to pay the $1,000 entry fee despite his oral assertions on the record. Moreover, as noted in the trial court, the goal of the land bank was to ensure that the property was put to productive use, and it should be maintained by an interested homeowner and not a "transient population." In the present case, defendant's father purchased the property in 2010 from a tax foreclosure sale. Despite the nature of the foreclosure purchase, no member of defendant's family paid the property taxes to protect their interest from foreclosure. Defendant admitted that he knew in 2014 that the home was going to be foreclosed for failure to pay the taxes. He further asserted that he continued to reside in the home despite the fact that it lacked utility service for gas, electricity, and water. Although defendant represented that he had the $1,000 to enter into the buy-back program, there was no indication that defendant had the funding or stability to maintain the utilities and make future property tax payments. Further, plaintiff's counsel represented that three different individuals expressed an interest in the subject property. This demonstrated the concern that a committed homeowner was not interested in maintaining the home, but transient ownership was at issue.

Defendant contends that the city inflated the property taxes and demolished properties to the detriment of low income homeowners. However, there is no indication that defendant ever sought an exemption or reduction in the property tax. More importantly, defendant admitted that the taxes were not paid even partially and cannot demonstrate that, but for, any alleged inflated tax assessment, he would have made the payments and kept the property. Thus, defendant failed to demonstrate that he was eligible to enter the buy-back program with documentary evidence that he can pay the $1,000 fee and that he would be able to pay for the utilities and future taxes and maintain the home. Therefore, the trial court did not err in quieting title to the property in favor of plaintiff.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron

-5-