EVERSMAN v CONCRETE CUTTING & BREAKING

Docket No. 109977. Argued March 7, 2000 (Calendar No. 3). Decided July 27, 2000.

Harry Eversman sought worker's compensation for injuries suffered when he was hit by an automobile while crossing a road in Pennsylvania. Because the plaintiff had traveled there for a job assignment, he claimed that his injuries arose out of and in the course of his employment. A magistrate awarded benefits, concluding that because the plaintiff's work required him to travel to the area where the accident occurred, the injury arose out of and in the course of his employment. The Worker's Compensation Appellate Commission reversed, holding that the plaintiff's activities on the day of his injury presented a deviation from the special mission so great that it dwarfed the business purpose of the mission and thus broke the nexus between plaintiff's employment and his subsequent injury. The Court of Appeals, REILLY, P.J., and MACKENZIE and B. K. ZAHRA, JJ., held that MCL 418.301(3); MSA 17.237(301)(3) did not preclude benefits, and in an opinion per curiam reversed the Worker's Compensation Appellate Commission. 224 Mich App 221 (1997) (Docket No. 183948). The Court found that Eversman was a traveling employee, who was considered to be continuously within the scope of employment during the trip, except when a distinct departure for a personal errand can be shown. The defendant appeals.

In an opinion by Chief Justice WEAVER, joined by Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court held:

The plaintiff was injured while engaged in activities the major purpose of which were social or recreational, and, thus, was not covered under MCL 418.301(3); MSA 17.237(301)(1) of the Worker's Disability Compensation Act.

1. An employee who seeks worker's compensation must show by competent evidence not only the fact of an injury, but also that the injury occurred in connection with employment, i.e., arose out of and in the course of that employment. MCL 418.301(3); MSA 17.237(301)(3) provides that an injury incurred in the pursuit of an activity the major purpose of which was social or recreational is not covered under the act.

2. In applying the social or recreational test of subsection 301(3), it is not necessary to examine the purpose of a special mission, work-day's activities, or an out-of-town trip; rather, the major purpose of the activity in which the plaintiff was engaged at the time of the injury is to be considered. In this case, regardless of whether the plaintiff was on a special mission or working as a traveling employee, his recovery is precluded under the plain language of MCL 418.301(3); MSA 17.237(301)(3).

Reversed.

Justice CAVANAGH, concurring in the result, stated that the plaintiff was engaged in the pursuit of activities with a major social or recreational purpose when he was injured, and his injury was not sufficiently connected with or caused by his employment. Compensation may be denied if the circumstances indicate that an injury did not occur in the course of employment, if no connection or nexus between the employment and the injury can be shown, or if the employee deviates from the employment relationship to the extent that there were risks so unrelated to the employee's business that it dwarfed the business purpose of the trip. Under the circumstances of this case, the plaintiff's decision to return to a bar after a long day of drinking, and then to cross a well-traveled highway in the dark unquestionably increased the risk of injury, so unrelated to the business that the business purpose of the trip was dwarfed. Thus, the plaintiff's injury did not arise out of his employment because the nexus between employment and injury was broken, and, similarly, he was not injured in the course of employment because his activities lost their business character and were no longer a circumstance of employment.

However, the majority announces a rule that is impermissibly broad. Rather, the case should be examined under MCL 418.301(1); MSA 17.237(301)(1) in addition to MCL 418.301(3); MSA 17.237(301)(3), and should address whether the traveling employee doctrine should be adopted in Michigan. Under the traveling employee doctrine, employees whose work entails travel away from the employer's premises are held to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable. If the Supreme Court were to adopt the traveling employee doctrine, subsection 301(3) would be inapplicable to traveling employees. Because the employee would be continuously within the scope of employment, it would be illogical to conduct a subsection 301(3) analysis because there would be no need to determine whether the

employee is presumed to be in the course of employment. A more logical approach would be to proceed under subsection 301(1). Under the traveling employee doctrine, the traveling employee would generally be considered to be in the course of employment for subsection 301(1) purposes, but could be removed from subsection 301(1) coverage if a distinct departure on a personal errand is made. The employee could also be removed from the coverage of subsection 301(1) if the injury does not "arise out of" employment. If, however, the traveling employee doctrine were rejected, the result would be that traveling employees would have no special status. In that case, a plaintiff's claim could be barred by the social or recreational exemption of subsection 301(3) as long as the employee fell into one of the three categories covered by the presumption of the first sentence of subsection 301(3). If the employee did not fit into one of the subsection 301(3) categories, the subsection 301(1) "arising out of and in the course of employment" test would apply. However, if the employee did fit within one of the categories of subsection 301(3), then the employee could potentially be denied benefits under the social or recreational test of subsection 301(3) in addition to the "arising out of or in the course of" test of subsection 301(1).

The majority separates the last clause of subsection 301(3) from the whole of the statutory text, and concludes that benefits may be denied whenever an employee is engaged in a social or recreational activity, an analysis that is dangerously overbroad. It is not clear that subsection 301(3) is designed to preclude recovery in every situation where an employee is engaged in an activity with a major social or recreational purpose. Similarly, the majority opinion could be read as barring recovery for any type of unfortunate injury that occurs as a result of an on-the-job mishap. ·

Justice KELLY, dissenting, stated that the analysis of whether injuries caused by activities an employee pursues while traveling for an employer are compensable under the WDCA should focus on whether the activity was incidental to traveling. In this case, the major purpose of the plaintiff's activities on the day and at the time of his injuries was not recreational or social; therefore, his injuries should be presumed to arise out of and in the course of employment. Because there is no evidence that the plaintiff was injured by reason of his intentional and wilful misconduct, MCL 418.305; MSA 17.237(305) does not bar worker's compensation benefits.

The traveling employee doctrine is well recognized in worker's compensation law. Employees whose work entails travel away from the employer's premises are held to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries aris-

ing out of the necessity of sleeping in hotels and eating in restaurants away from home are usually held compensable. It is appropriate to apply the doctrine to this case.

The major purpose of activities incidental to travel for an employer is not, by definition, social or recreational. Traveling employees have been recognized as being subject to unique circumstances for purposes of worker's compensation benefits. The majority appears to believe that employees who have been sent to an out-of-town work site are expected to do their jobs and nothing else. Such an unreasonable limitation should not be imposed on employees who must travel as a requirement of their employment.

*Wheeler Upham, P.C.* (by *Gary A. Maximiuk* and *Jack L. Hoffman*), for the intervening plaintiff-appellee Auto-Owners Insurance Company.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for the defendants-appellants.

Amici Curiae:

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mitchell J. Wood* and *Ray W. Cardew, Jr.*, Assistant Attorneys General, for Second Injury Fund.

*Martin L. Critchell* for Michigan Manufacturers Association and Michigan Self-Insurers Association.

WEAVER, C.J. The question presented in this worker's compensation case is whether compensation for plaintiff's injury was barred by MCL 418.301(3); MSA 17.237(301)(3)[1] where plaintiff was struck by a

---

[1] MCL 418.301(3); MSA 17.237(301)(3) reads in full:

An employee going to or from his or her work, while on the premises where the employee's work is to be performed, and within a reasonable time before and after his or her working hours, is presumed to be in the course of his or her employment. Notwithstanding this presumption, an injury incurred in the pursuit of an activity the major purpose of which is social or recreational is not

car as he returned to his motel after spending six hours visiting bars, drinking alcoholic beverages, playing pool and eating a meal. We reverse the judgment of the Court of Appeals and reinstate the decision of the Worker's Compensation Appellate Commission denying plaintiff benefits.

### FACTUAL AND PROCEDURAL BACKGROUND

Eversman worked for Concrete Cutting & Breaking[2] as a heavy equipment operator. Eversman's work often required him to travel to job sites outside Michigan. On July 11, 1990, Eversman and a co-worker traveled from Indiana to Pennsylvania for an assignment. The following day they reported to work at 7:00 A.M., but were unable to work because of rain. Eversman and his co-worker stayed at the job site for two hours, then left for the day.

At approximately 3:00 P.M., Eversman and his co-worker left their hotel and visited two bars, where they drank beer and played pool. They briefly returned to their motel room to eat food they had brought with them and drink more beer. Next, they went to a bar across the street from the motel, where they ate chicken wings and drank beer. When his co-worker went back to the motel room, Eversman stayed in the bar. At about 10:00 P.M., Eversman was hit by a car while crossing the divided highway that separates the motel from the bar. Eversman suffered

---

covered under this act. Any cause of action brought for such an injury is not subject to section 131.

[2] On appeal to this Court, Auto-Owners Insurance Company is the intervening plaintiff-appellee. When Eversman and Concrete Cutting & Breaking reached a settlement, Auto-Owners Insurance moved to intervene. The Court of Appeals granted its motion, substituting Auto-Owners Insurance as plaintiff.

a traumatic brain injury with various complicating injuries and fractures. A blood test administered at the hospital determined that Eversman had a blood alcohol level of 0.23.

Eversman filed a worker's compensation claim. The magistrate awarded benefits, concluding that because Eversman's work required him to travel to the area where the accident occurred, the injury arose out of and in the course of his employment. The WCAC reversed, holding that

> plaintiff's activities on the day of his injury presented a deviation from the special mission so great that it dwarfed the business purpose of the mission and thus broke the nexus between plaintiff's employment and his subsequent injury. [1995 Mich ACO 289, 295.]

The Court of Appeals held that MCL 418.301(3); MSA 17.237(301)(3) did not preclude benefits in this case,[3] and reversed the Worker's Compensation Appellate Commission. The Court of Appeals found that Eversman was a "traveling employee" and that traveling employees "are considered to be continuously within the scope of their employment during their trip, except when a distinct departure for a personal

---

[3] The Court of Appeals stated:

> Because of the facts and nature of this case, there can be no merit in defendants' arguments based upon MCL 418.301(3); MSA 17.237(301)(3) . . . . MCL 418.301(3); MSA 17.237(301)(3) precludes benefits for an injury incurred in the pursuit of an activity for which the major purpose is social or recreational. While eating, drinking, and sleeping are personal activities, under plaintiff's circumstances—those of a traveling employee—these activities were within the continuity of plaintiff's employment. [224 Mich App 221, 228; 568 NW2d 387 (1997).]

Although defendant had briefed the subsection 301(3) issue, the Worker's Compensation Appellate Commission did not reach it.

errand can be shown." 224 Mich App 221, 225; 568 NW2d 387 (1997).

This Court denied defendant's motion for leave to appeal. 459 Mich 919 (1998). On reconsideration, leave to appeal was granted. 461 Mich 881 (1999).

ANALYSIS

Under the Worker's Disability Compensation Act,

[a]n employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. [MCL 418.301(1); MSA 17.237(301)(1).]

It is well settled that an employee who seeks worker's compensation must show by competent evidence not only the fact of an injury, but also that the injury occurred in connection with his employment, arising out of and in the course of that employment. *Calovecchi v Michigan*, 461 Mich 616, 622; 611 NW2d 300 (2000); *Hills v Blair*, 182 Mich 20, 26; 148 NW 243 (1914).

The primary purpose of the worker's compensation act is to provide benefits to the victims of work-related injuries by allocating the burden of these payments to the employer, and, therefore, ultimately, to consumers. *Simkins v General Motors Corp (After Remand)*, 453 Mich 703, 711; 556 NW2d 839 (1996). An employee who suffers an injury arising out of and in the course of his employment will be eligible for compensation regardless of whether the employer was at fault. In return, the employer is immunized from tort liability because the worker's compensation act, under MCL 418.131(1); MSA 17.237(131)(1), provides that this compensation is the exclusive remedy

for a personal injury, except for an injury resulting
from an intentional tort. *Simkins, supra* at 711.

A

Eversman has urged this Court to adopt the rule
that employees traveling on business trips are
deemed to be continuously within the scope of their
employment during the trip, except when a distinct
departure for a personal errand can be shown, citing
Larson, Workers' Compensation Law. In the instant
case it is not necessary for us to decide whether to
adopt the traveling employee doctrine. For the pur-
poses of this appeal, we assume that Eversman was
within the scope of his employment on the trip to
Philadelphia. Regardless of whether Eversman was on
a special mission or working as a traveling employee,
his recovery is precluded under the plain language of
MCL 418.301(3); MSA 17.237(301)(3).

B

The relevant portion of MCL 418.301(3); MSA
17.237(301)(3) was enacted by 1980 PA 357, effective
January 1, 1982.[4] In 1981, the Legislature amended
the language of the second and third sentences of
subsection 301(3) to its current form:

> Notwithstanding this presumption, an injury incurred in
> the pursuit of an activity the major purpose of which is
> social or recreational is not covered under this act. Any

---

[4] At that time the second clause of subsection 301(3) read:

Notwithstanding this presumption, an injury incurred *exclusively*
in the pursuit of a social or recreational activity is not covered
under this act. Any cause of action brought for such an injury is
not subject to section 131. [Emphasis added.]

cause of action brought for such an injury is not subject to section 131.

This Court has never addressed the second and third sentences of subsection 301(3).[5] The Court of Appeals has applied the "social or recreational" test of subsection 301(3) in only two[6] published cases: *Nock v M & G Convoy, Inc (On Remand)*, 204 Mich App 116; 514 NW2d 200 (1994), and *Angel v Jahm, Inc*, 232 Mich App 340; 591 NW2d 64 (1998).

In *Nock, supra*, a Pittsburgh truck driver went to a bar in Detroit with fellow truck drivers, and was injured in a fight outside the bar. Although the driver was required by his employer to stay overnight in Detroit, the Court of Appeals held that the plaintiff's injury arose out of a social or recreational activity. *Id.* at 121. The Court of Appeals affirmed the WCAC's denial of benefits.

In *Angel, supra*, the plaintiff was on an educational cruise sponsored by his employer. He was injured while riding a rented motorbike around the island of Martinique during his free time. The Court of Appeals held that there was competent, material, and substantial evidence to support the magistrate's finding that the plaintiff was not engaged in "an activity the major purpose of which is social or recreational" when he was injured, and reinstated the magistrate's grant of benefits. *Id.* at 344.

---

[5] We do not consider *Thiede v G D Searle & Co*, 278 Mich 108; 270 NW 234 (1936), relevant to our interpretation of the statute because *Thiede* was decided some forty-four years before the enactment of 1980 PA 357.

[6] In *Allison v Pepsi-Cola Bottling Co*, 183 Mich App 101; 454 NW2d 162 (1990), the Court of Appeals declined to apply the earlier version of the "social or recreational" test, because the plaintiff was injured in 1979 and the statute did not take effect until 1982. The Court of Appeals held that the statute applied prospectively from its effective date.

In applying the social or recreational test of subsection 301(3),[7] the Court does not need to examine the purpose of the special mission, the work-day's activities, or the out-of-town trip, but rather must consider the major purpose of the activity in which the plaintiff was engaged at the time of the injury.[8]

The *Nock* panel was correct in holding that when the plaintiff was injured in a fight outside a bar, his injury occurred during the pursuit of an activity whose main purpose was "recreational or social." We question the Court of Appeals discussion of subsection 301(3) in *Angel*, and its conclusion that there was competent, material, and substantial evidence to support the magistrate's finding that the plaintiff was not engaged in "an activity the major purpose of which is social or recreational" when he was riding a rented

---

[7] The concurrence argues that the "social or recreational" test of subsection 301(3) should be applied only when one of the presumptions set forth in the first sentence of subsection 301(3) also applies. This reading of subsection (3) is too narrow. The second sentence of subsection 301(3) says "Notwithstanding this presumption, an injury incurred in the pursuit of an activity the major purpose of which is social or recreational is not covered *under this act.*" (Emphasis added.) The concurrence reads the sentence as if it terminated with *"under this subsection."* The concurrence, *post,* pp 100-101, and the dissent, *post,* p 106, assert that "the first sentence of subsection 301(3) embodies a presumption, while the second sentence limits the presumption." *Post,* p 101. If this were so, then the "social and recreational" test would not preclude recovery, but only render the presumption inapplicable—a clear contradiction of the language of the statute. We also note that this interpretation seems inconsistent with other portions of the concurrence. See *post,* pp 102-103.

[8] The question is whether the employee was injured while engaged in the pursuit of an activity the major purpose of which is social or recreational. MCL 418.301(3); MSA 17.237(301)(3). The test is not, as the dissent would have it, whether the employee was injured while pursuing "reasonable and necessary personal activities." *Post,* p 109.

Moreover, the dissent focuses on whether plaintiff was intoxicated and if the intoxication caused his injury. This is, again, off target. A worker is not allowed benefits if injured while engaged in the pursuit of an activity the major purpose of which is social or recreational, whether that activity is barhopping or bowling or even hang gliding.

motorbike around the island of Martinique during his free time. Although the cruise itself was work related, renting and riding the motorbike during free time appears to be a social or recreational activity.[9]

Determining the "major purpose" of an activity can often be a difficult exercise. Here, however, there can be no question that the major purpose of Eversman's activities was social or recreational. At the time of the accident Eversman was ending a six-hour span of visiting bars, drinking beer, and playing pool. There is some dispute over whether Eversman's intoxication contributed to his injuries. However, intoxicated or not, the major purpose of Eversman's activities was social or recreational. Eversman was given the day off. No work-related activities were expected of him; his time was his own. He played pool and drank beer, visiting several bars in the process. Eversman argues that because it was necessary for him to eat dinner, the visit to the bar for chicken wings and beer was not a social or recreational activity. We disagree. Examining the totality of circumstances surrounding Eversman's activities during the six-hour episode, we conclude that his conduct fell within the exception set forth in subsection 301(3).

C

The plaintiff urges us to read subsection 301(3) as requiring the deviation analysis set forth in *Bush v Parmenter, Forsythe, Rude & Dethmers*, 413 Mich

---

[9] However, we do not decide whether the plaintiff in *Angel* was entitled to benefits.

444; 320 NW2d 858 (1982).[10] In *Bush,* this Court addressed an employee's deviation from his employment where, at the end of an out-of-town business trip, the employee had spent seven hours dancing and drinking at various bars and nightclubs. After leaving a restaurant, Bush was shot to death, apparently during an armed robbery attempt. *Id.* at 448. The Court held that although Bush had been on a special mission for his employer, his deviation from employment "was so extensive that the business character of the return trip had dissolved so that when decedent returned to his homeward course he was no longer in the course of employment." *Id.* at 450. In making this determination, the Court considered "whether the deviation of decedent Bush was so extensive, in that it lasted for such a long time and incurred substantial increases in danger to decedent unrelated to his employment, that the business character and purpose of the trip dissolved prior to the injury." *Id.* at 450.

This deviation inquiry is not necessary for the application of subsection 301(3). Under the plain language of the statute, the relevant inquiry is whether plaintiff's injury occurred during the pursuit of an activity the major purpose of which was social or recreational.

### CONCLUSION

Eversman was injured while engaged in activities the major purpose of which were social or recreational. Therefore he was not covered under the Worker's Disability Compensation Act. MCL

---

[10] The injury in *Bush* took place before the effective date of subsection 301(3), so the "social or recreational" test of subsection 301(3) was not applicable, and not addressed.

418.301(3); MSA 17.237(301)(3). We reverse the judgment of the Court of Appeals and reinstate the order of the Worker's Compensation Appellate Commission denying plaintiff benefits.

TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with WEAVER, C.J.

CAVANAGH, J. I concur with the result of the majority opinion, though not its rationale. I write separately because the majority announces a rule that is impermissibly broad. Further, I would examine this case under MCL 418.301(1); MSA 17.237(301)(1)[1] in addition to MCL 418.301(3); MSA 17.237(301)(3), and would address the issue whether the traveling employee doctrine should be adopted in Michigan.

I

Specifically, I disagree with the majority's statements that "it is not necessary for us to decide whether to adopt the traveling employee doctrine," and that "[r]egardless of whether Eversman was on a special mission or working as a traveling employee, his recovery is precluded under the plain language of MCL 418.301(3); MSA 17.237(301)(3)." *Ante* at 93. To

---

[1] MCL 418.301(1); MSA 17.237(301)(1) provides as follows:

An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. In the case of death resulting from the personal injury to the employee, compensation shall be paid to the employee's dependents as provided in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death.

the contrary, if this Court were to adopt the traveling employee doctrine, subsection 301(3) would be inapplicable. On the other hand, if the traveling employee doctrine is not adopted, subsection 301(3) may or may not be applicable.

In its entirety, subsection 301(3) provides as follows:

> An employee going to or from his or her work, while on the premises where the employee's work is to be performed, and within a reasonable time before and after his or her working hours, is presumed to be in the course of his or her employment. Notwithstanding this presumption, an injury incurred in the pursuit of an activity the major purpose of which is social or recreational is not covered under this act. Any cause of action brought for such an injury is not subject to section 131.

Under principles of statutory construction, we are required to give effect to every statutory clause and to consider the statutory context holistically. *Deur v Newaygo Co Sheriff*, 420 Mich 440, 445; 362 NW2d 698 (1984); *Grand Rapids v Crocker*, 219 Mich 178, 182; 189 NW 221 (1922). When taken in its entirety, subsection 301(3) provides a rule to be applied in limited circumstances.

The first sentence of subsection 301(3) delineates three instances in which an employee is presumed to be in the course of employment: (1) when the employee is going to or from work, (2) while the employee is on the premises where work is to be performed, and (3) within a reasonable time before and after working hours. The second sentence of subsection 301(3) creates an exemption to the rule created by the first sentence of subsection 301(3), as is evidenced by the introductory clause, "Notwithstanding this presumption . . . ." The exception will be irrele-

vant unless the rule would apply. In cases not involving one of the three categories of subsection 301(3), the "social or recreational" exception would never be reached. Instead, our analysis would proceed under subsection 301(1). The majority erroneously applies the exception to cases where the rule is potentially inapplicable.[2] I expressly disagree with a construction of subsection 301(3) that fails to recognize the relationship between the subsection 301(3) presumption and its subsection 301(3) "social or recreational" exception. I agree with the dissent that the first sentence of subsection 301(3) embodies a presumption, while the second sentence limits the presumption. *Post* at 106.

A primary issue in this case is whether this Court should adopt the traveling employee doctrine. Under the traveling employee doctrine, as adopted by the Court of Appeals, "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip,

---

[2] The majority's analysis may be based in part on its adoption of *Nock v M & G Convoy, Inc (On Remand)*, 204 Mich App 116; 514 NW2d 200 (1994). I expressly disagree with *Nock*'s statement that "we cannot agree that the social-activity amendment applies only to situations covered by the presumption preceding it . . . ." *Id.* at 120-121. *Nock*'s holding was conclusory and unpersuasive.

Moreover, I disagree with the majority's assessment that my reading of subsection 301(3) is "too narrow." *Ante* at 95, n 7. The final clause of subsection 301(3), which follows the presumption of the first sentence and the exception of the second sentence, plainly provides that benefits will be barred completely when a person who would otherwise be covered by the first sentence of subsection 301(3) incurs an injury "in the pursuit of an activity the major purpose of which is social or recreational." In other words, a person who is "going to or from work, while the employee is on the premises where the work is to be performed, and within a reasonable time before and after working hours" will not be able to recover if that employee is engaged in the pursuit of an activity with a major social or recreational purpose.

except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." 2 Larson, Workers' Compensation Law, § 25.01, pp 25-1 to 25-2.

If we were to adopt the traveling employee doctrine, subsection 301(3) would be inapplicable to traveling employees. Because the employee would be continuously within the scope of employment, it would be illogical to conduct a subsection 301(3) analysis because there is no need to determine whether the employee is presumed to be in the course of employment. A more logical approach would be to proceed under subsection 301(1). Under the traveling employee doctrine, the traveling employee would generally be considered to be in the course of employment for subsection 301(1) purposes, but could be removed from subsection 301(1) coverage if the employee makes a distinct departure on a personal errand. The employee could also be removed from the coverage of subsection 301(1) if the injury does not "arise out of" employment.

On the other hand, if we were to reject the traveling employee doctrine, then the result would be that traveling employees would have no special status. In that case, a plaintiff's claim could be barred by the "social or recreational" exemption of subsection 301(3) as long as the employee fell into one of the three categories covered by the presumption of the first sentence of subsection 301(3). If the employee did not fit into one of the subsection 301(3) categories, the subsection 301(1) "arising out of and in the course of employment" test would apply. However, if the employee did fit within one of the categories of

subsection 301(3), then the employee could poten-
tially be denied benefits under the "social or recrea-
tional" test of subsection 301(3) in addition to the
"arising out of or in the course of" test of subsection
301(1).

The majority separates the last clause of subsection
301(3) from the whole of the statutory text, and con-
cludes that benefits may be denied *whenever* an
employee is engaged in a social or recreational activ-
ity. The majority's analysis is dangerously overbroad. I
am not convinced that subsection 301(3) is designed
to preclude recovery in every situation where an
employee is engaged in an activity with a major
"social or recreational" purpose. For example, like the
Court of Appeals in *Angel v Jahm, Inc*, 232 Mich App
340, 342, n 4; 591 NW2d 64 (1998), I "question
whether an employer who requires attendance at an
event should be permitted to argue that the major
purpose of the event was social or recreational in
order to avoid liability." Similarly, the majority opin-
ion could be read as barring recovery for any type of
unfortunate injury that occurs as a result of an on-
the-job mishap.

II

Because the majority resolves this case on the
basis of subsection 301(3), I reserve judgment about
whether the traveling employee doctrine should be
adopted. I concur in the majority's result because,
absent the adoption of the traveling employee doc-
trine, the plaintiff's claim must fail regardless of
whether the case is analyzed under subsection 301(3)
or under subsection 301(1).

I do not disagree with the majority's *application* of subsection 301(3)'s social or recreational test to the present facts, I question the *applicability* of subsection 301(3). However, absent the adoption of the traveling employee doctrine, and operating under the assumption that subsection 301(3) is applicable on the grounds that plaintiff would fall within one of the delineated subsection 301(3) categories, I would agree with the majority that the plaintiff was engaged in the pursuit of activities with a major social or recreational purpose when he was injured.

Moreover, the plaintiff could not recover even if we were to conclude that subsection 301(3) is inapplicable. Under subsection 301(1), the question would be whether the injury arose out of and in the course of employment. I am not persuaded that Eversman's injury was sufficiently connected with or caused by his employment. Under our decisional law, compensation may be denied if the circumstances indicate that an injury did not occur in the course of employment, if no connection or nexus between the employment and the injury can be shown, or if the employee deviates from the employment relationship to the extent that there were risks so unrelated to the employee's business that it "dwarfed the business purpose" of the trip. *Bush v Parmenter, Forsythe, Rude & Dethmers*, 413 Mich 444, 460; 320 NW2d 858 (1982). Under the circumstances of this case, Eversman's decision to return to the bar after a long day of drinking, and then to cross a well-traveled highway in the dark unquestionably increased the risk of injury. These risks were so unrelated to the business that the business purpose of the trip was "dwarfed." I would hold that Eversman's injury did not arise out of his employment because the nexus between employment

and injury was broken. Similarly, his injury was not in the course of employment because it lost its business character and was no longer a circumstance of employment.

Although the intervening-appellee's case might be strengthened by the adoption of the traveling employee doctrine, the doctrine has not yet been adopted in Michigan. Regardless of whether subsection 301(3) or subsection 301(1) is considered controlling, the intervening-appellee cannot prevail. Therefore, I concur in the result reached by the majority. I would reverse the decision of the Court of Appeals.

KELLY, J. (*dissenting*). I would affirm the Court of Appeals decision to reinstate the magistrate's award of benefits to Harry Eversman. The major purpose of Eversman's activities the day and time of his injuries was not recreational or social; therefore, his injuries are presumed to arise out of and in the course of employment. MCL 418.301(3); MSA 17.237(301)(3). Because there is no evidence that Eversman was "injured by reason of his intentional and wilful misconduct," MCL 418.305; MSA 17.237(305) does not bar worker's compensation benefits.

### I. THE TRAVELING EMPLOYEE DOCTRINE

The traveling employee doctrine is one well recognized in worker's compensation law:

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels and eating in restaurants

away from home are usually held compensable. [2 Larson, Workers' Compensation Law, § 25.01, pp 25-1 to 25-2.]

In its opinion, the Court of Appeals adopted this doctrine.[1] Because Eversman was injured while traveling for his employer, I agree with the Court of Appeals that it is appropriate to apply the doctrine to this case.

## II. THE STATUTE DOES NOT PRECLUDE BENEFITS FOR EVERSMAN

Eversman was injured while attempting to cross a street separating his hotel from a bar at which he had just finished his meal while traveling for his employer. The majority gives too little consideration to the position of one who must travel away from home at the request of his employer. It isolates Eversman's activities on the day he was injured and determines that he engaged in activities that were mainly social or recreational in purpose, precluding benefits pursuant to MCL 418.301(3);   MSA 17.237(301)(3).

The first sentence of MCL 418.301(3);   MSA 17.237(301)(3) embodies a presumption: employees are in the course of employment within a reasonable time of coming from and going to work and while on the employer's premises.[2] The second sentence limits the presumption:

---

[1] 224 Mich App 221, 225; 568 NW2d 387 (1997).

[2] The majority assumes that the first sentence's presumption applies equally to employees who are traveling to and working at out-of-town work sites, as to those at their home bases. On its face, the presumption does not refer to traveling employees. Therefore, one might hesitate to conclude that the Legislature intended MCL 418.301(3);   MSA 17.237(301)(3) to apply when an employee travels on the employer's business.

Notwithstanding this presumption, an injury incurred in the pursuit of an activity the major purpose of which is social or recreational is not covered under this act.

The major purpose of activities incidental to travel for one's employer is not, by definition, social or recreational.[3] This case illustrates the point. Eversman's activities on the day of his injuries *did* serve an objective of his employer. He was staying in Beaver County, Pennsylvania, several hundred miles from his home in Dorr, Michigan, so that he could resume working once the weather cleared sufficiently for construction activities.

I disagree with the majority's assertion that "No work-related activities were expected of [Eversman]; his time was his own." *Ante*, p 96. Eversman's time was *not* completely his own. He could not, for instance, go home and enjoy a meal with his family. He could not meet his friends at the bar for an after-work drink. He was obliged to stay within the proximity of Beaver County, Pennsylvania.

Because he was traveling for his employer, Eversman's employment necessitated a meal, probably one prepared by a restaurant. It was while returning from such a meal that Eversman was hit by an automobile and injured. The major purpose of his visit to the bar across from his hotel was not social or recreational, but to eat a meal. MCL 418.301(3); MSA

---

[3] The majority mischaracterizes the dissent when stating that it applies the wrong test. *Ante*, p 95, n 8. The test is indeed whether the employee was injured while engaged in the pursuit of an activity the major purpose of which is social or recreational. What I disagree with is the majority's conclusion that the dominant purpose of the activities here, which were incidental to traveling for one's employer, was social or recreational.

17.237(301)(3) does not preclude Eversman from receiving benefits under the facts of this case.[4]

### III. MICHIGAN LAW ALLOWS COMPENSATION TO AN EMPLOYEE INJURED WHILE TRAVELING FOR HIS EMPLOYER

The majority observes that this Court has not addressed the social activity exception to the coming and going presumption in MCL 418.301(3); MSA 17.237(301)(3). Although it has yet to address the exception specifically, it has recognized that traveling employees are subject to unique circumstances for purposes of worker's compensation benefits. The majority fails to take this consideration into account in its application of the social activity exception to the facts here.

In *Thiede v G D Searle & Co*,[5] a traveling salesman died when the hotel where he was staying burned down. This Court found that, because plaintiff's employment required him to stay at a hotel, "[t]he risks to which he was exposed in staying at hotels . . . were incidental to his employment." *Thiede,*

---

[4] For the same reasons discussed above, I disagree with the concurrence's conclusion that Eversman deviated from the employment relationship. Crossing the road that separated the bar from Eversman's hotel did not dwarf the business purpose of the trip, but instead furthered it.

The concurrence points to the following "circumstances" as increasing the risk of injury: his "decision to return to the bar after a long day of drinking, and then to cross a well-traveled highway in the dark . . . ." *Ante*, p 104. The evidence does not show that drinking caused Eversman's injuries. Nor was crossing the road that separated Eversman's hotel from one of the few eating establishments available to him a risk unrelated to the business purpose of the trip. Eversman had to eat. There was no reasonably available and safer manner to cross that road at the location in question.

[5] 278 Mich 108; 270 NW 234 (1936). Although the *Thiede* decision was decided before the enactment of the WDCA, nothing in the act affects the validity of the decision.

*supra* at 113. The plaintiff's estate was awarded worker's compensation benefits. *Id.*

Likewise, Eversman was expected to stay at a hotel and eat his meals in restaurants as an incident of his employment. The majority arrives at the conclusion that his activities were mainly recreational after "[e]xamining the totality of circumstances surrounding Eversman's activities during the six-hour episode . . . ." *Ante*, p 96. But, it appears to have left out one important factor in its analysis: Eversman was in Beaver County, Pennsylvania, at the request of his employer. He could not go home, but had to occupy himself in that location until the weather cleared, so that he could finish his assignment.

The majority appears to believe that an employee who has been sent to an out-of-town work site is expected to do his job and nothing else. This leads to troublesome results. For example, if there were no washer and dryer in an employee's hotel, and he ventured outside, would he be ineligible for worker's compensation benefits if injured at a Laundromat?

I would not impose an unreasonable limitation on employees who must travel as a requirement of their employment.

### IV. APPLYING THE TRAVELING EMPLOYEE DOCTRINE TO THIS CASE COMPORTS WITH THE SPIRIT OF THE WDCA

It is well established that this Court should liberally construe the WDCA, so as to grant, rather than deny, benefits. *Simkins v General Motors Corp (After Remand)*, 453 Mich 703, 710-711; 556 NW2d 839 (1996). Denying benefits to employees simply because they leave their hotel rooms to eat while on a trip for their employers does not comport with this

principle. Eversman's employer, who displaced him from home, should compensate him if he is injured when pursuing reasonable and necessary personal activities while traveling at the employer's request. The majority's rule allows employers to impose the inconveniences of being away from home and family while not accepting responsibility for injuries that arise from the necessities of travel.

While the majority seems to focus on the fact that Eversman spent his day drinking and shooting pool, *ante*, p 96, it does not conclude that Eversman's intoxication caused his injuries. As the Court of Appeals correctly points out, there is not enough evidence to support such a conclusion. 224 Mich App 227.

MCL 418.305; MSA 17.237(305) precludes compensation for injuries "[i]f the employee is injured by reason of his intentional and wilful misconduct . . . ." The evidence does show that Eversman was intoxicated. But it does not show that his injuries arose as a result of intoxication. If it did, then MCL 418.305; MSA 17.237(305) would compel a different result.[6]

### V. CONCLUSION

Not all injuries caused by activities an employee pursues while traveling for an employer are compensable under the WDCA. The analysis should focus on whether the activity was incidental to traveling. *Thiede, supra* at 113.

---

[6] The majority mischaracterizes this dissent as focusing "on whether plaintiff was intoxicated and if the intoxication caused his injury." *Ante*, p 95, n 8. In two paragraphs out of nineteen, I address the fact of plaintiff's intoxication to point out that, since it did not cause his injuries, MCL 418.305; MSA 17.237(305) should not preclude the payment of benefits to him.

Here, Eversman did not stray far from his hotel. He was injured while pursuing an activity that was not recreational or social. As the Court of Appeals correctly noted, "Like other employees who travel for days at a time, [Eversman] had to eat and sleep." 224 Mich App 225. It was in crossing a street returning to his hotel after eating a meal that Eversman was injured.

I also agree with the Court of Appeals that this would be a different case if Eversman's drinking contributed to the accident. 224 Mich App 227-228. Since it did not, it was error for the WCAC to consider it to be an important factor necessitating reversal of the magistrate's award of benefits.

I would affirm the magistrate's award of benefits and the Court of Appeals decision.