NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0682n.06
Filed: September 19, 2007

No. 06-1726

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PAUL HOUSE and MICHELLE HOUSE, )
)
    Plaintiffs-Appellants, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR THE
JOHNSON CONTROLS, INC., )  EASTERN DISTRICT OF MICHIGAN
)
    Defendant-Appellee. )

Before: SUTTON and McKEAGUE, Circuit Judges; FORESTER, District Judge.[*]

SUTTON, Circuit Judge. After Paul House was injured at work, he filed a tort action against his employer, Johnson Controls. The district court granted summary judgment in favor of the company, holding that Michigan's Worker's Disability Compensation Act barred the claim. We affirm.

I.

At Johnson Controls, House often worked with a team of employees that performed a procedure known as "die-flipping." A die is a large piece of equipment that in this case weighed between 5,000 and 25,000 pounds. Die-flipping requires employees to connect the die to a steel I-

_____

[*] Judge Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

beam with a cable, permitting them to hoist the I-beam (and thus the die) with a vehicle. Once the die has been lifted, either it will flip over of its own accord or the employees must use another vehicle to flip the die manually. Once the die flips, the original vehicle lowers the I-beam, which allows the die to land back on the ground.

Before his accident, House had participated in many die-flipping operations and seen many others. Based on these experiences, he came to the belief that the process was unnecessarily dangerous; that the company emphasized "get[ting] it done as quick[ly] as possible" at the expense of precaution; and that there was no formal procedure for safely performing the task. House expressed these concerns to his immediate supervisors—Carl Hawkins, Pat O'Hara and Chris White—and suggested that Johnson Controls should purchase specialized die-flipping equipment and establish a protocol for the procedure. Acknowledging the danger, House's supervisors conveyed these requests to members of the plant's upper management, but they did not take any action in response.

On April 4, 2002, House and other employees attempted to flip a die. Normally, the team used a special die cart to hoist the die, but on this occasion they used a large forklift known as a "hi-lo." The team successfully picked up and flipped the die, but it became stuck when they tried to rest it flat on the ground. Observing the process from a safe distance, House motioned to the vehicle operator to stop and ran across the front of the vehicle "to the other side to see if it was hung up on something." JA 88. Suddenly, "[s]omething snapped" or "broke loose," causing the I-beam to fly off the forklift and to bounce off the cement and onto House's leg. *Id*. After the accident, Hugh

Guingrich, the plant's human resources manager, told House that the accident never would have happened had upper management approved the purchase of new equipment. House's injury made him eligible to receive workmen's compensation under Michigan law without regard to whether Johnson Controls was responsible for the accident. Mich. Comp. Laws § 418.301(1).

House filed a tort claim against Johnson Controls in state court, contending that the company intentionally caused the accident when it refused to purchase equipment that would have made the procedure safer. The company removed the action to federal court on diversity grounds, then moved for summary judgment, arguing that House could not satisfy the requirements of an intentional-tort action and that Michigan's worker's compensation law barred a negligence claim. In response, House proffered the affidavit of his supervisor, Carl Hawkins, who said (1) that he had "actual knowledge . . . [that] an injury would occur to employees involved in the die flipping process" because of "the lack of a standardized procedure, coupled with the lack of appropriate training," JA 143, and (2) that Johnson Controls, "despite being aware of the certainty of injury, . . . deliberately failed to take steps to avoid said injuries," JA 144.

The district court granted Johnson Controls' motion, reasoning that House could not show an intentional tort and that Michigan's worker's compensation law foreclosed the action. House appealed, requiring us to give fresh review to the district court's decision and to apply the same summary-judgment standards that the district court applied. *Thomas v. Miller*, 489 F.3d 293, 297 (6th Cir. 2007).

II.

The Michigan Worker's Disability Compensation Act provides an exclusive compensation remedy for employees injured on the job, except when the injury stems from an intentional tort. Mich. Comp. Laws § 418.131; *see Travis v. Dreis & Krump Mfg. Co.*, 551 N.W.2d 132, 138 (Mich. 1996). The statutory exception applies only "when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury." Mich. Comp. Laws § 418.131(1); *see also Herman v. City of Detroit*, 680 N.W.2d 71, 76 (Mich. Ct. App. 2004) (per curiam). An injured employee may establish the specific intent to injure in one of two ways: (1) by demonstrating that the employer "made a conscious choice to injure an employee and ha[s] deliberately acted or failed to act in furtherance of that intent," *Palazzola v. Karmazin Prods. Corp.*, 565 N.W.2d 868, 873 (Mich. Ct. App. 1997), or (2) by showing that "the employer had *actual knowledge* that an *injury was certain to occur* and willfully disregarded that knowledge," Mich. Comp. Laws § 418.131(1) (emphasis added); *see also Travis*, 551 N.W.2d at 138.

House disclaims any effort to rely on the first method of showing intent, admitting that no one at Johnson Controls made a conscious effort to injure him. At issue is the second method of establishing intent, which the Michigan Supreme Court has construed narrowly. To prove "actual knowledge that an injury is certain to occur," the employer's knowledge must be actual, not constructive or implied. *Travis*, 565 N.W.2d at 143. An effort to show that "[a]n incident [was] 'certain to occur,'" moreover, "cannot be established by reliance on the laws of probability, the mere occurrence of a similar event, or conclusory statements of experts." *Giles v. Ameritech*, 660 N.W.2d

72, 73 (Mich. 2003) (summarily reversing a court of appeals' decision denying summary judgment to an employer whose employee was injured while using a torch in a hole with a natural gas line).

To satisfy this definition, the claimant must show that "*no doubt* exists with regard to whether [an injury] will occur," *Travis*, 551 N.W.2d at 143 (emphasis added), and that the employer's knowledge concerns the harm that indeed occurred: "An employer's knowledge of general risks is insufficient to establish an intentional tort." *Herman*, 680 N.W.2d at 77; *cf. Oaks v. Twin City Foods, Inc.*, 497 N.W.2d 196, 197 (Mich. Ct. App. 1992) ("It is not enough that the employer acted recklessly and even envisioned the type of accident that did in fact occur."). Dangerous conditions may form the basis of a claim only if the injury is "sure and inevitable" and "only if the employer *knows* the condition will cause an injury and refrains from informing the employee about it." *Alexander v. Demmer Corp.*, 660 N.W.2d 67, 67 (Mich. 2003).

To be "known" and "certain," an injury must spring directly from the employee's duties and the employee cannot have had the chance to exercise individual volition. In cases where the employee makes a decision to act or not act in the presence of a known risk, the injury is not certain because the employer cannot know what the employee's reaction will be in advance and the employee is able "to take steps to keep from being injured." *Travis*, 551 N.W.2d at 145. Just as intervening actions by third parties can negate proximate causation, *see Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 475 (1876), so an injury cannot be certain to occur when the individual takes affirmative, deliberate action that brings about the harm, *see Palazzola*, 565 N.W.2d at 874 (holding no knowledge of certain injury from harmful vapors where a "decision to clean the tank was

made on the spot" by a nonsupervisory employee); *Herman*, 680 N.W.2d at 77 (holding no intentional tort where death from electrocution "was the result of decedent's momentary and tragic lapse in judgment"); *cf. Travis*, 551 N.W.2d at 145 (noting with approval a finding of intentional tort against an employer that hired employees who could not speak English and therefore could not take precautions in light of the warning labels on the chemicals with which they were working). The only situation where the Michigan Supreme Court has allowed a claim to survive summary judgment since the Michigan legislature created the statutory intentional tort exception was in *Golec v. Metal Exchange Corp.*, 551 N.W.2d 132, 147 (Mich. 1996), the companion case to *Travis*. The court in that case found knowledge of certain harm because the employer had ordered the plaintiff to go back to placing scrap metal with combustible aerosol cans into a furnace—even after he had just been injured from a small explosion. *Id.* at 137, 147; *see also Palazzola*, 565 N.W.2d at 876 (suggesting that the employer's conduct must be "egregious").

Measured by these Michigan cases, House has failed as a matter of law to show that Johnson Controls had "actual knowledge that an injury was certain to occur." Mich. Comp. Laws § 418.131(1). His evidence at most establishes that the company knew of the risk of harm, not that it had "actual knowledge" of this danger and not that it had "no doubt" that this accident would occur. On the day of the incident, House made a voluntary decision to leave the safety zone to investigate the problem. House knew that this procedure was generally dangerous and had made numerous complaints about the process, but he still decided to move out of the safety zone to inspect the die. Johnson Controls did nothing to inhibit House's ability to take precautions, and no one

disputes that the bouncing I-beam would not have struck him had he remained at a safe distance. House's independent exercise of discretion in moving out of the safety zone negates any knowledge of a "certain" harm of this kind of accident.

Even if House had not taken this independent action, moreover, he could not show actual knowledge that the injury would occur. Although the company was undeniably aware of the dangerousness of the situation, knowledge of the potential for the type of accident that occurred falls short of the kind of knowledge Michigan law requires. *See Oaks*, 497 N.W.2d at 196. At most, House's principal piece of evidence—the affidavit by supervisor Hawkins—creates a fact dispute about negligence relating to the die-flipping procedure, not intent as defined by Michigan case law. Hawkins, it is true, said "that despite being aware of the certainty of injury, Johnson Controls . . . deliberately failed to take steps to avoid said injuries." JA 144. But no one to this day knows how the accident in fact happened and why the I-beam suddenly flew off the forklift. Hawkins' knowledge that injury was "certain to occur" at some point shows only his awareness that injury was bound to occur due to the general risk of the activity, not that injury was inevitable and certain to occur when and how it did. Because the affidavit necessarily speculates about the risk of future harm, it cannot satisfy the strict standard of certainty—of *no doubt*—that the Michigan courts established in *Travis* and its progeny. *Herman*, 680 N.W.2d at 77.

House's evidence of employer knowledge, it bears adding, is far less compelling than the evidence presented in several claims summarily rejected by the Michigan courts. In *Alexander*, the plaintiff was injured while cleaning pinch rollers when there had been four prior injuries from the

rollers. *See Alexander v. Demmer Corp.*, No. 230417, 2002 WL 1921900, at *2 (Mich. Ct. App. Aug. 20, 2002) (per curiam). The Michigan Supreme Court summarily reversed the court of appeals and granted summary judgment for the employer. *Alexander*, 660 N.W.2d at 67. Similarly, in *Joliff v. Detroit City Dairy, Inc.*, 664 N.W.2d 211 (Mich. 2003), the Michigan Supreme Court summarily granted summary judgment where the employer had twice ordered the employee—over his protest—to drive a pallet jack that had no brakes, *see Joliff v. Detroit City Dairy, Inc.*, No. 232530, 2002 WL 31012627, at *1–2 (Mich. Ct. App. Sept. 6, 2002); *see also Giles*, 660 N.W.2d at 73 (summarily granting summary judgment where the employee was instructed to use a torch to splice telephone wires in a hole with a natural gas line); *Menzel v. Light Metals Corp.*, 627 N.W.2d 601, 601 (Mich. 2001) (summarily granting summary judgment where the employer knew that a press was double cycling and that a safety device had failed); *Gray v. Morley*, 596 N.W.2d 922, 923–25 (Mich. 1999) (holding that there could be no intentional tort even where the employer swerved violently in his truck while the employee was in the bed in order to scare the plaintiff); *Bock v. General Motors Corp.*, 637 N.W.2d 825, 829–30 (Mich. Ct. App. 2001) (per curiam) (holding that GM did not have actual knowledge of certain injury from employee exposure to highly concentrated chemicals because scientific experiments establishing injuries in animals establish only a probability of injury in humans). Here, where House had executed the die-flipping procedure many times without injury, he presents no evidence as to why this injury was preordained rather than merely probable. House cannot show that his employer knew that injury was certain to occur, and we therefore cannot infer the specific intent to injure necessary for his claim to survive.

III.

For these reasons, we affirm.